UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ELIJAH BLAISE BIEN-AIME,

           Plaintiff,

   v.

LIEUTENANT STEDMAN FERGUSON,
CORR. COUNSELOR DEBRA GIEBFRIED,
CORR. OFFICER ANTHONY COSME,
CORR. OFFICER ANTHONY CARIC, and
CAPTAIN CARLOS RODRIGUEZ,

           Defendants.

**MEMORANDUM & ORDER**
24-CV-03667 (HG)

**HECTOR GONZALEZ**, United States District Judge:

      Plaintiff Elijah Bien-Aime, a Bureau of Prisons ("BOP") inmate who commenced this proceeding *pro se*,[1] brings this action alleging that Defendants, various employees of the Metropolitan Detention Center in Brooklyn ("MDC"), subjected him to "inhumane" living conditions while he was detained at the MDC. Because Plaintiff brings this action against federal officers, the Court construes his complaint as asserting claims under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"). *See* ECF No. 1 ("Initial Complaint").[2] Specifically, Plaintiff alleges that Defendants violated his constitutional rights under the First, Eighth, and Fourteenth Amendments. *Id.* Defendants move to dismiss the Complaint. *See* ECF No. 22 (Mot. to Dismiss). For the reasons that follow, the Court GRANTS Defendants' motion and dismisses the complaint in its entirety.

---

[1]     Plaintiff engaged counsel after Defendants filed their motion to dismiss.

[2]     Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

## BACKGROUND

I.  **Factual History**[3]

On January 22, 2022, Plaintiff robbed a convenience store in Brooklyn.  *See United States. v. Bien-Aime*, No. 22-cr-0133 (E.D.N.Y. Feb. 6, 2024), ECF No. 7.  He was arrested about three months later and indicted shortly thereafter.  *Id.*  On April 11, 2023, Plaintiff pleaded guilty, *see id.* at April 11, 2023, Text Order, and in February 2024, the Court sentenced him to 85 months' imprisonment, two years' supervised release, and restitution of $12,100, *id.* at ECF No. 48.

In connection with that sentence, Plaintiff was held at the MDC until March 12, 2024, during which time he spent approximately two weeks (from February 14, 2024, to February 26, 2024) in the MDC's Special Housing Unit ("SHU").  ECF No. 22-3 ¶ 5; ECF No. 27-1 ¶ 3.[4]  Plaintiff was then transferred to the Federal Correctional Institution in Lewisburg, Pennsylvania ("FCI Lewisburg"), before he was transferred to the United States Penitentiary Big Sandy in Inez, Kentucky ("USP Big Sandy"), where he is currently incarcerated.  ECF No. 27-1 ¶ 3.

---

[3] The Court "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).

[4] Plaintiff submitted a Declaration in support of his opposition to Defendants' motion to dismiss (ECF No. 27-1 (the "Additional Declaration")).  In the Additional Declaration, he sets out allegations concerning his attempts to obtain and submit BOP forms seeking administrative remedies (*i.e.*, BP-8 and BP-9 forms) to relevant parties at the MDC, as well as his efforts to submit similar forms (BP-10 and BP-11 forms) while at USP Big Sandy.  *See id.*  Plaintiff also alleges Defendants threatened to retaliate against him when he attempted to seek administrative remedies.  *See id.*

Given that Plaintiff initially proceeded *pro se*, the Court construes his Additional Declaration as additional factual allegations and considers them for the purposes of the instant motion.  *See West v. Harkness*, No. 17-cv-0621, 2021 WL 5321958, at *5 (N.D.N.Y. Nov. 16, 2021) ("if the filing party was proceeding *pro se* at the time of filing, the filing party is entitled to an extra-liberal construction, even if he or she became represented at a later time").

Plaintiff's allegations in the instant case center around events that allegedly occurred during his time in the MDC's SHU. He alleges that he was subjected to "inhumane conditions" during that twelve-day period, namely, that his constitutional rights under the First, Eighth, and Fourteenth Amendments were violated because: (1) the lighting and heating systems of his cell in the SHU did not work; (2) the mattress in that cell was too thin and short; (3) he was denied access to the law library; (4) he was prohibited from buying stamps and hygiene supplies; and (5) he was denied access to the MDC's barbershop. ECF No. 7 at 4.

He also alleges that he attempted to file a complaint regarding the conditions of his confinement using the BOP's Administrative Remedy Program ("ARP") on multiple occasions but was unsuccessful each time, and that MDC staff threatened him with violence or additional time in the SHU if he continued to complain. ECF No. 1-2 at 3; ECF No. 27-1 ¶¶ 8, 9. Plaintiff's allegations concerning BOP's ARP focus on various BOP forms. In connection with his time in the SHU, Plaintiff alleges that he requested a BP-8 form approximately eight or nine times from various MDC employees, including Defendant Debra Giebfried, the Correctional Counselor assigned to his floor, as well as Defendants Lieutenant Stedman Ferguson, Captain Carlos Rodriguez, Correction Officer Anthony Caric, and Correction Officer Anthony Cosme, but each time, Defendants refused to provide the form he requested. ECF No. 27-1 ¶ 9. Plaintiff further alleges that, on one occasion, Officers Caric and Cosme threatened to withhold food from him if he continued to complain about the heating and lighting in his cell. *Id.* When Plaintiff eventually obtained a BP-8 form from a staff member on a different floor, no one was willing to accept it. *Id.* ¶10–12. Plaintiff also alleges that, in connection with his efforts to submit BP-8 forms, Defendant Giebfried threatened him and told him that if he returned to her unit after his time in the SHU, she would "make sure" that he got sent back there. *Id.* ¶ 11. And he alleges

3

that, after being threatened by Defendant Giebfried, he attempted to submit the BP-8 form to Schnahider Demosthenes, his Unit Manager at the MDC who was responsible for "overseeing certain aspects of the Administrative Remedy Program," but Demosthenes refused to accept the form. *Id.* ¶ 12; ECF No. 22-3.

After he was unable to submit his BP-8 form, Plaintiff sought to escalate his concerns and submit a BP-9 form. ECF No. 27-1 ¶ 13. Plaintiff alleges that he obtained a BP-9 form from a Unit Manager on a different floor after members of his unit team again denied his requests for the form on multiple occasions. *Id.* Similar to the BP-8 form, Plaintiff alleges that Defendant Giebfried refused to accept the completed BP-9 form and "cursed at" him when he tried to submit it. *Id.*

On March 12, 2024, Plaintiff was transferred from the MDC to FCI Lewisburg, and was later moved to USP Big Sandy. ECF No. 22-3 ¶ 5; *id.* ¶ 3. At USP Big Sandy, where Plaintiff also spent time in the facility's SHU, Plaintiff alleges that he was eventually able to submit BP-8 and BP-9 forms concerning his conditions at the MDC SHU, but that unit staff later returned the forms without explanation and threatened to place him in the SHU for a longer period if he attempted to file the forms. ECF No. 27-1 ¶ 16.

Notably, while Plaintiff did not bring administrative claims in connection with this action, he filed administrative claims at the MDC on at least four occasions before February 2024, when the alleged events underlying the instant matter are alleged to have occurred. ECF No. 22-1 ¶ 7; ECF No. 22-6 at 13.

## II.     Procedural History

Plaintiff originally filed his complaint *pro se* on May 15, 2024, *see* ECF No. 1, and attached a document, titled "Motion of Intent to File for Civil Rights Violation," ECF No. 1-2,

4

but due to a filing error, several pages were omitted from the complaint. After he was notified of the filing error, Plaintiff re-filed his complaint with all the pages included, but without the attachment. *See* ECF No. 7 ("Corrected Complaint").[5] On March 13, 2025, Defendants filed their motion to dismiss. *See* ECF No. 22. About two weeks after Defendants filed their motion, counsel filed notices of appearance on behalf of Plaintiff, *see* ECF Nos. 24–26, and on May 13, 2025, Plaintiff (now represented by counsel) filed his opposition to the motion to dismiss, ECF No. 27. On June 13, 2025, Defendants filed their reply. *See* ECF No. 32.

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure Rule 12(b)(1)

When a party moves to dismiss under Rule 12(b)(1) as well as on other grounds, courts "consider the Rule 12(b)(1) challenge first" because if a court finds that it lacks subject matter jurisdiction, then the Defendants' other "defenses and objections become moot and do not need to be determined." *Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019). "A district court properly dismisses an action under [Rule 12(b)(1)] for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms. S.à.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015). "A plaintiff asserting subject matter jurisdiction must prove by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In considering a motion to dismiss for lack of subject matter jurisdiction, a "district court must take all uncontroverted facts in the complaint

---

[5] For the sake of clarity, the Court's references to the "Corrected Complaint" refer to Plaintiff's complete complaint, *i.e.*, ECF No. 7, and the Motion of Intent to File for Civil Rights Violation attached to the original complaint, *i.e.*, ECF No. 1-2. The Court considers the factual allegations contained therein in light of Plaintiff's *pro se* status at the time of filing and because that attachment expands on the facts alleged in the Corrected Complaint. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

5

(or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). Furthermore, for purposes of assessing jurisdiction, the Court must assume that Plaintiff's legal claims "would be successful on the merits." *See Clementine Co., LLC v. Adams*, 74 F.4th 77, 83 (2d Cir. 2023).

## II. Federal Rule of Civil Procedure Rule 12(b)(6)

In order to survive a motion to dismiss under Rule 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

In addition to requiring sufficient factual matter to state a plausible claim for relief, Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to provide a short, plain statement of the claim against the defendant so that the defendant has adequate notice of the claims being asserted. *See Iqbal*, 556 U.S. at 677–78 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* at 678. To satisfy this standard, the complaint must, at a minimum "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000). "Plaintiff must allege sufficient facts to state a plausible claim against each defendant named in his amended

complaint." *Mitchell v. Macy's Inc.*, No. 17-cv-1845, 2017 WL 11453552, at *4 (S.D.N.Y. May 3, 2017).

### III.  Plaintiff's *Pro Se* Status

A *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  The Court's obligation "to construe a *pro se* complaint liberally" continues to apply "[e]ven after *Twombly*" established the plausibility standard for assessing pleadings.  *Newsome v. Bogan*, 795 F. App'x 72, 72 (2d Cir. 2020).  "A pro se litigant, however, is not exempt 'from compliance with relevant rules of procedural and substantive law.'"  *Ramos-Nunez v. United States*, No. 14-cr-102, 2019 WL 1300811, at *4 (S.D.N.Y. Mar. 21, 2019) (quoting *Traguth v. Zuck*, 710 F.2d 90, 96 (2d Cir. 1983)).[6]

### IV.  The *Bivens* Framework

In *Bivens*, the Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights."  *McGowan v. United States*, 825 F.3d 118, 123 (2d Cir. 2016).  There, the Supreme Court implied a private right of action under the Fourth Amendment for an unreasonable search and seizure claim against federal narcotics agents for handcuffing a man in his own home without a warrant.  *Bivens*, 403 U.S. at 389.  Since then, the Supreme Court has recognized *Bivens* claims in only two other circumstances:  (1) under the Fifth Amendment's due process clause for gender discrimination against a Congressman for firing his female secretary, *see Davis v. Passman*, 442 U.S. 228 (1979); and (2) under the Eighth Amendment's prohibition on cruel and unusual punishment

---

[6]  In this case, the Court applies the less stringent *pro se* pleading standard by considering all facts alleged by Plaintiff, including the additional allegations submitted in his Opposition after he obtained counsel.  *See West*, 2021 WL 5321958, at *5.

7

against prison officials for failure to treat an inmate's asthma which led to his death, *Carlson v. Green*, 446 U.S. 14 (1980).

"Since these cases, the [Supreme] Court has not implied additional causes of action under the Constitution. Now long past the heady days in which th[e] [Supreme] Court assumed common-law powers to create causes of action, [the Supreme Court] ha[s] come to appreciate more fully the tension between judicially created causes of action and the Constitution's separation of legislative and judicial power." *Egbert v. Boule*, 596 U.S. 482, 491 (2022). "Given the notable change in the [Supreme] Court's approach to recognizing implied causes of action . . . the Court has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017). When asked to imply a *Bivens* action, the Supreme Court's "watchword is caution" and "[e]ven a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy." *Egbert*, 596 U.S. at 491.

The Supreme Court has instructed district courts to proceed in two steps when analyzing a *Bivens* claim: first, "ask whether the case presents a new *Bivens* context—*i.e.*, is it meaningfully different from the three cases in which the Court has implied a damages action," then, "if a claim arises in a new context, a *Bivens* remedy is unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 492. However, "those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* Furthermore, "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure." *Id.* at 493.

8

## **DISCUSSION**

Defendants argue this action should be dismissed for the following reasons: (1) the Court lacks subjective matter jurisdiction because Plaintiff failed to exhaust his administrative remedies prior to bringing this action; (2) Plaintiff fails to state a cognizable *Bivens* claim; and (3) Plaintiff's claims seeking injunctive relief regarding the conditions of his confinement at the MDC became moot upon his transfer out of that facility.[7]  *See* ECF No. 22-6.[8]

In response, Plaintiff, now represented by counsel, argues that his complaint should not be dismissed because (1) exhaustion under the Prison Litigation Reform Act ("PLRA") is not a jurisdictional prerequisite, and (2) he had no administrative remedies available before bringing this action.  *See* ECF No. 27 at 12–21.

### I.   Subject Matter Jurisdiction

The Court first addresses the Rule 12(b)(1) issue.  *See Daly*, 939 F.3d at 426.  Defendants argue that the Court lacks subject matter jurisdiction with respect to Plaintiff's PLRA claim because Plaintiff failed to exhaust his administrative remedies under the BOP's ARP before bringing this lawsuit.  *See* ECF No. 22-6 at 11.

---

[7]   The Court agrees with Defendants' argument that injunctive relief related to the conditions of his confinement at MDC is no longer appropriate because Plaintiff has been transferred out of the MDC.  *See* ECF No. 22-6 at 23–24; *see also Deutsch v. Morton*, 101 F.3d 683 (2d Cir. 1996) ("A transfer between prisons renders moot a suit for injunctive relief.").  In any event, because Plaintiff failed to address the issue of injunctive relief in his Opposition, that claim is abandoned.  *See Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-cv-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . ., a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").

[8]   The Court does not need to consider Defendants' additional argument that Plaintiff has brought a non-cognizable Section 1983 claim, ECF No. 22-6 at 25–26, because Plaintiff concedes that his claims are only *Bivens* claims.  ECF No. 27 at 13.

9

Although Defendants are correct that the PLRA requires inmates to exhaust all internal remedies before filing a lawsuit, *see* 42 U.S.C. § 1997e(a), the Second Circuit has concluded that "failure to exhaust administrative remedies is not a jurisdictional predicate" under the PLRA. *Richardson v. Goord,* 347 F.3d 431, 433 (2d Cir. 2003). Accordingly, the Court has jurisdiction to adjudicate the case. *See Dimick v. Baruffo,* No. 02-cv-2151, 2003 WL 660826, at *2 n.1 (S.D.N.Y. Feb. 28, 2003) (concluding that motion to dismiss for failure to exhaust under PLRA is "more appropriately addressed under Rule 12(b)(6)").

## II.     The *Bivens* Claims

Moving on, the Court begins by applying the two-step analysis from *Bivens* and its progeny. Defendants argue that Plaintiff's claims arise in a new context, and special factors, including an alternative remedial structure, counsel against finding a new *Bivens* remedy. ECF No. 22-6 at 17–23. Specifically, Defendants assert that Plaintiff could have sought relief through the BOP's ARP or through a habeas corpus petition.[9] *Id.* Plaintiff does not contest that his claims arise in a new context. Rather, he states that "[t]he dispute here centers around the second prong of the [*Bivens* analysis]," and argues that the alternative remedies were not available to him. ECF No. 27 at 19–20.

### A.     *Meaningfully Different Context*

Since Plaintiff does not refute Defendants' argument that Plaintiff's claims arise in a new *Bivens* context, the Court construes Plaintiff's silence as a concession. *See Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) ("A party may be

---

[9]     The Court need not address the issue of habeas corpus because the existence of an alternative remedy, *see infra*, cautions against granting Plaintiff habeas relief. *See Rivera v. Samilo,* 370 F. Supp. 3d 362, 371–72 (E.D.N.Y. 2019) ("[b]ecause adequate alternative remedies exist[] here, the Court need not address whether any other special factors counsel hesitation").

10

deemed to concede an argument by failing to address it in an opposition brief."). Accordingly, the Court moves on to the second step in the *Bivens* analysis.

    B.    *Special Factors*

Under the second step, the Court turns to the question of whether any "special factors counsel hesitation in the absence of affirmative action by Congress." *Egbert*, 596 U.S. at 492. Notably, if even one special factor applies, that "is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Id.* at 493 (quoting *Ziglar*, 582 U.S. at 137). In this case, at least two special factors apply. The Court addresses them in turn.

        i.    <u>Deference to Prison Administrators</u>

The Court is bound by caselaw counseling against recognizing a *Bivens* remedy "in cases involving prison administration." *Schulte v. Bureau of Prisons*, 2022 WL 1468017, at *4 (S.D.N.Y. May 10, 2022). "Allowing individual claims for money damages against prison staff would stray from the Supreme Court's guidance that '[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). Because "it would be inappropriate for the [C]ourt to imply a remedy for damages in an area that is uniquely within the province and professional expertise of corrections officials," the Court finds that the deference owed to prison administrators constitutes a special factor weighing against recognition of a *Bivens* remedy. *Negron v. United States*, 2020 WL 5634304, at *8 (S.D.N.Y. Sept. 21, 2020); *see Johnson v. Santiago*, 624 F. Supp. 3d 295, 303 (E.D.N.Y. 2022) (deference to prison administration constitutes a special factor counseling against a *Bivens* remedy when plaintiff

11

asserted an Eighth Amendment claim based on a correction officer's alleged failure to intervene to protect him from an attack by another inmate).

> ii.     Alternative Remedies

The existence, here, of an alternative remedial scheme is an additional reason militating against extending *Bivens* to Plaintiff's claims. The Supreme Court in *Egbert* held that the availability of alternative remedial mechanisms is a special factor that counsels hesitation with respect to extending *Bivens*. *Egbert*, 596 U.S. at 493. The relevant question is "not . . . whether the court 'should provide for a wrong that would otherwise go unredressed,' [n]or does it matter that 'existing remedies do not provide complete relief.'" *Id.* "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy. That is true even if a court independently concludes that the Government's procedures are 'not as effective as an individual damages remedy.'" *Id.* at 498. "In the context of prison litigation, 'suits in federal court for injunctive relief and grievances filed through the [BOP]'s Administrative Remedy Program' constitute alternative remedies." *Crespo v. Carvajal*, No. 24-1138, 2025 WL 635497, at *1 (2d Cir. Feb. 27, 2025).

An alternative remedial scheme was available to Plaintiff in this case. Under BOP's ARP, a prisoner must submit a formal grievance within 20 calendar days of the event giving rise to the complaint. *See* 28 C.F.R. § 542.14(a). Under that scheme, Plaintiff had 20 days following his release from the MDC SHU on February 26, 2024, to file a grievance form. Plaintiff does not challenge that the BOP's ARP is applicable here, nor does he allege that he filed any of the BOP forms within the twenty-day period. In fact, he does not even allege that he tried to submit a grievance form during that period. *See* ECF No. 27-1. Instead, Plaintiff asserts that prison

12

staff thwarted his attempts to submit grievance forms (1) during his confinement at the MDC SHU, *i.e.*, before the twenty-day period began, and (2) during his incarceration at USP Big Sandy, months after the period had expired. These allegations are immaterial, as both instances fall outside the twenty-day period. Thus, even in a light favorable to Plaintiff, the Court cannot reasonably infer that Defendants thwarted his attempts to submit the applicable forms. Plaintiff's allegations in this regard demonstrate only that he failed to properly use the remedial scheme available to him. He does not establish that such regime was unavailable. Because such a scheme was available, the Court declines to extend a *Bivens* remedy for this additional reason.

In sum, Plaintiff's concession that the claim here would constitute a new *Bivens* context, coupled with the two special factors discussed above, gives the Court "reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 483. Accordingly, the Court finds that Plaintiff has failed to state a cognizable *Bivens* claim, and thus, failed to state a claim upon which relief can be granted.[10]

---

[10] When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Of course, an opportunity to amend is not required where, as here, "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it." *Id.* Thus, "[w]here granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

Here, the Court finds that leave to amend is unwarranted for two reasons. First, the deficiencies in Plaintiff's *Bivens* claim cannot be cured by amendment. *See Porter v. Uhler*, No. 17-cv-0047, 2019 WL 1292226, at *6–7 (N.D.N.Y. Mar. 21, 2019), *aff'd*, 790 F. App'x 329 (2d Cir. 2020). Second, the Court has already considered the additional allegations set forth in Plaintiff's Additional Declaration, and finds that those allegations do not cure the deficiencies discussed herein. Accordingly, Plaintiff's Complaint is dismissed without leave to amend.

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6). *See* ECF No. 22. The Court declines to issue a certificate of appealability and certifies that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962).

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close this case.

SO ORDERED.

*/s/ Hector Gonzalez*
  HECTOR GONZALEZ
  United States District Judge

Dated: Brooklyn, New York
       November 10, 2025